1807.
JUNE.

M'Elderry
vs
Smith

M'ELDERRY vs. SMITH'S Lessee.

APPEAL from the General Court. This was an action of ejectment brought to recover two tracts of land, viz. *Cole's Harbour*, and *Mountenay's Neck*, lying in *Baltimore* county. The defendant, (now appellant,) pleaded the general issue. The plaintiff at the trial, at May term 1804, offered in evidence, that *Andrew Stigar*, in his life-time, being seized of four parts or parcels of the two tracts of land for which the ejectment was brought, and being justly indebted to *James Franklin*, in order to secure to him payment of the money due, did, on the 9th of May 1787, execute a mortgage to him of the said parcels of land, to be void upon payment of the money due, on the 7th of May 1789. He also gave in evidence, that no part of the money has been paid; and that the lessor of the plaintiff is heir at law and administratrix of *Franklin*, who died before the institution of this suit. The defendant then offered in evidence, that *Stigar* was seized and possessed of the said four parcels of land before and on the 24th of May 1785. He then offered in evidence a record of a judgment obtained by *Thomas Usher* against *Stigar*, in the general court in May 1785, which judgment was signed on the 24th of that month. And evidence that *Usher* afterwards departed this life on the 1st of January 1786, having by his will appointed *T. Usher, J. Donaldson,* and *S. Johnston,* his executors. He also offered in evidence certain records and proceedings of the general court, showing that the said executors afterwards, on the 5th of April 1786, sued out a writ of *scire facias* on the said judgment, the same being then due and unsatisfied; and that a *fiat* was thereon entered at October term 1787.

That a writ of *fieri facias* issued on the last mentioned judgment, directed to the then sheriff of *Baltimore* county, on the 17th of July 1788, returnable to the October term following, when it was returned by the said sheriff, thereon endorsed, "made as per schedule, and remains in the sheriff's hands for want of buyers." Which said schedule stated, that "four acres of land near *Baltimore-*town, and adjoining the property or lands of *George Lux*, with all the improvements thereon," were valued by four persons, as appraisers, to £1500, and "about 27 acres of land, more or less, part of *Cole's Harbour* or *Todd's*

*If the defendant during the pendency of a scire facias, on a judgment against him, the plaintiff, after a fiat on the scire facias, may issue a fieri facias, and levy it on the lands so aliened, without proceeding against the alienees.*

*A scire facias against terretenants is either general, without naming them, or special against them by name.*

*Whether or not the return made on a fieri facias by a sheriff, stating that he had held it "on 4 acres of land near Baltimore-town, and adjoining the lands of G. L., also on about 27 acres of land, more or less, part of C H or T R, and part of M N, lying to the N side of Pitt-street, near Baltimore-town," &c. and the sheriff's return on a venditioni exponas, issued for a sale of the lands, that he had "made and satisfied plaintiff in part," together with parol evidence of the sale of the lands by the sheriff, and his deed therefor to the purchaser, are sufficient to vest the legal title to the lands in the purchaser? Quere.*

1807.

M'Elderry
vs
Smith

*Range*, and part of *Mounteney's Neck*, lying to the north side of *Pitt*-street, near *Baltimore*-town," were valued at £12 per acre; and "about 2½ acres of land in the S. East addition of *Baltimore*-town, lying on *Harford* and *Eden* streets," were valued at £12 per acre; and "Part of *Todd's Range*, containing 11 acres, more or less, leased to *Peter Shepperd* for £90 pr. annum," was valued at £1500. That a writ of *venditioni exponas* issued to the said sheriff on the 6th of December 1788, commanding him to expose to sale the several pieces or parcels of land, and the money therefrom arising, have before the court at the May term then following; which last mentioned writ the said sheriff returned, thereon endorsed, "made and satisfied plaintiff in part, £485." He then offered in evidence, that *T. Usher* purchased the lands exposed to sale upon the said writ of *venditioni exponas*, from the said sheriff, under the said execution; and that the said sheriff executed to him a deed therefor, which deed the defendant also offered in evidence, dated the 31st of December 1790. He also offered in evidence, that *T. Usher* did duly pay to the said sheriff the purchase money for the land so to him sold; that he entered upon the said land, and was thereof seized; and afterwards, on the 11th of May 1792, for a valuable consideration to him paid by the defendant, did duly execute and deliver to him a deed of bargain and sale for the said parts of the two tracts of land before described. Also, that under that deed the defendant entered, &c. and that *Franklin*, or any person claiming under him, never was in the actual possession of the said lands, but that the same remained in the actual possession of *Stigar*, or those under whom the defendant claims. The plaintiff then prayed the opinion of the court, and their direction to the jury, that on the foregoing statement of facts, if they believe it to be true, the plaintiff is entitled to recover all the lands for which this suit is brought.

*Martin*, (Attorney-General,) and *Harper*, for the plaintiff, in their arguments cited *Arnott and Copper vs. Nicholls*, 1 *Harr. & Johns.* 471. and *Co. Litt.* 1.

*Key, Purviance* and *S. Chase, jr.* for the defendant, in their arguments cited 1 *Blk. Com.* 91, 328. *Cunningham's*

*L. D.* tit. *Terretenant. Jacob's L. D.* tit. *Terretenant. Virt. Ab.* 563, 567. 3 *Bac. Ab.* tit. *Execution,* 363. *Com. Dig* tit. *Execution,* (D 1.) 2 *Blk. Com.* 91.

CHASE, Ch. J.*(a)*. In the case of *Arnott and Copper vs. Nicholls,* the court considered they might on motion decide whether or not *Goldsborough* was a *bona fide* purchaser, and it turned out that he was a fair purchaser. The *fieri facias* in that case had been taken out after the alienation of the land, and the court thought the alienee should have notice; and that a *scire facias* should have issued to warn him as terretenant; that the whole real estate of the defendant was bound by the judgment, and if there were other alienees, or other real estate, the whole should contribute. That the alienee, having notice, might come in and pay the judgment so as to exonerate the land; and if there was other property than that aliened, the *fieri facias* should be levied of that, before recourse should be had to the land aliened.

The court consider the case of *Arnott & Copper vs. Nicholls,* similar to the case at bar in all respects except as to the mortgage.

The mortgagee has a legal title in the land mortgaged, and upon failure to comply with the proviso, by paying the money, the legal title is completely vested in the mortgagee, to be defeated only upon payment of the mortgage money; or in other words, the mortgagee has a legal title in the land, defeasable at law, by redemption at the day, indefeasable at law afterwards.

The mortgagee can bring his ejectment, but the mortgagor may come in and pay the money, and exonerate the land.

At the time the judgment was rendered on the *scire facias,* the mortgagee was terretenant of the land, and the *scire facias* ought to have issued against him to give him an opportunity to plead as terretenant.

A *scire facias* against terretenants is either general or special; that is, either against the terretenants generally, without naming them, or specially against them by name. In the former it may be shown there are others, and in the

*(a) Done* and *Sprigg,* J. concurred.

latter it is a good plea in *abatement*, that there are others not named.

In this case, instead of issuing the *fieri facias* the party should have taken out a *scire facias* against the mortgagee, the terretenant.

The court therefore give the direction to the jury as prayed by the plaintiff.

The defendant excepted, and the *verdict* and judgment being for the plaintiff, the defendant appealed to this court.

The cause was argued before TILGHMAN, NICHOLSON, and GANTT, J,

*Key* and *Shaaff*, for the appellant, stated, that the question for the decision of the court was, whether or not a writ of *scire facias* ought to have issued against the terretenants claiming under the mortgage, where there was an alienation of the land pending the *scire facias* on the judgment? They contended, that a writ of *scire facias* was not necessary, and referred to 2 *Bac. Ab.* tit. *Execution*, (I.) 731. 4 *Com. Dig.* tit. *Execution*, (D 1.) 133. 10 *Vin. Ab.* tit. *Execution*, 563. *Co. Litt.* 290.b.

*Harper*, for the appellee, cited 6 *Bac. Ab.* tit. *Scire Facias*, (C 5.) 114. *Tully's* case, 2 *Salk.* 598. 5 *Com. Dig.* tit. *Pleader*, (3 L. 14), 783. *Adams and Terretenants of Savage*, 2 *Salk.* 601. *The Earl of Pembroke's* case, *Carth.* 111. *Arnott & Copper vs. Nicholls.* 1 *Harr. & Johns.* 471. He also objected that the sheriff's returns on the *fieri facias* and *venditioni exponas*, and the sheriff's deed, with the evidence offered, were not sufficient to vest the legal title to the lands in the purchaser; but this objection was afterwards withdrawn, because it had not been made in the court below.

THE COURT OF APPEALS *reversed* the judgment of the General Court.

1807.

M'Elderry
vs
Smith